IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MAMOT FEED LOT AND TRUCKING, a Nebraska partnership, EUGENE P. SONNENFELD, an individual, JOHN RICHTER and ROSEMARY RICHTER, husband and wife, DENNIS LAND and RITA LAND, husband and wife, DAVE VEST and MARY VEST, husband and wife, ROBERT E. SMITH and TERESA R. SMITH, husband and wife, ELDON DUBAS, an individual, JERRY ROWSE, an individual, DALE BRABANDER and DELORES BRABANDER, husband and wife, ED BOLTZ, an individual, RAY DOGGETT, d/b/a DOGGETT HAY COACH, as an individual, and on behalf of a Class similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 4:06CV3297 |
| Plaintiffs, | ) ) | |
| v. | ) ) | **MEMORANDUM AND ORDER** |
| SCOTT HOBSON, individually and in his official capacity, as former President of EXCHANGE BANK, a/k/a EXCHANGE BANK OF GIBBON COLLECTIVELY, a federally insured state-chartered bank, EXCHANGE COMPANY, a Nebraska bank holding company, DENNIS SCHARDT, individually and in his official capacity, SUSAN SCHARDT, individually and in her official capacity, BRIAN SCHARDT, individually and in his official capacity, TOM BAXTER, individually and in his official capacity, SUE BOLIN, individually and in her official capacity, ALLISSA KROLL BOMBECK, individually and in her official capacity, JANET CARR, individually and in her official capacity, LINDA CLEVENGER, individually and in her official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

CRAIG DEWALT, individually and in his        )
official capacity, VAUGHN DUNCAN,            )
individually and in his official capacity,   )
STEPHEN ENGLAND, individually and in         )
his official capacity, KIM HANNON,           )
individually and in her official capacity,   )
ROGER HEFFELFINGER, individually and         )
in his official capacity, MICHELLE HIGH,     )
individually and in her official capacity,   )
TIM HORACEK, individually and in his official)
capacity, KEVIN HYNES, individually and in   )
his official capacity, HEATHER JURGENS,      )
individually and in her official capacity,   )
JEFF KONEN, individually and in his official )
capacity, DEE KROLIKOWSKI, individually      )
and in her official capacity, SHERI LYONS,   )
individually and in her official capacity,   )
PAT MANFULL, individually and in her         )
official capacity, PATRICK MCGUIRE,          )
individually and in his official capacity,   )
PAT MEYER, individually and in her official  )
capacity, REBECCA RATHJEN, individually      )
and in her official capacity, and DEB SLACK, )
individually and in her official capacity,   )
                                             )
                    Defendants.              )

      This is a suit brought against a bank, a bank holding company, and various shareholders, officers, directors or employees of the bank. It is prosecuted by persons or entities who have been sued by, or fear some indebtedness to, the bank or who claim to have been customers of the bank. Relying exclusively upon federal question jurisdiction,[1] the plaintiffs claim that the bank unlawfully collected or threatens to collect "usurious interest."

---

[1] In their brief, the plaintiffs admit that they "do not allege diversity as a basis for jurisdiction." (Filing 37 at CM/ECF page 24.) Even absent this concession, and given the allegations of the amended complaint that the plaintiffs and defendants are all from Nebraska (filing 3 at ¶¶ 20-57), it is apparent that diversity jurisdiction does not exist.

Pending before me are motions (filings 26 and 30) to dismiss under Rule 12(b)(1) and (b)(6) or for summary judgment under Rule 56. The motions are submitted by all of the defendants except Scott Hobson. I will grant the motions to dismiss and deny the motions for summary judgment as moot.[2]

Since the plaintiffs have already submitted one amended complaint, and since they have also submitted a 50-page brief defending the amended complaint as written, it is evident that the plaintiffs cannot cure the pleading problems. As a result, giving the plaintiffs leave to submit yet another amended complaint would be futile.[3]

In addition, but for the fact that Scott Hobson has not joined in the motions, my decision would have terminated this case. Instead, acting pro se, Hobson has filed an answer. (Filing 32.) To expedite things for the parties bound by this decision, I will enter judgment under Rule 54(b).

In general, the motions must be granted because I lack subject matter jurisdiction as to one claim and because the amended complaint fails to state a claim upon which relief can be granted even as to those claims over which I have subject matter jurisdiction. Albeit briefly, I expand upon this reasoning in the following portions of this opinion.

## *I. BACKGROUND*

The plaintiffs assert that this court has federal question jurisdiction under three unique federal laws. (Filing 3, Amended Complaint at ¶ 2.) Those laws are "12 U.S.C. §§ 85, 86 of the National Bank Act [of] 1984; 12 U.S.C. §§ 1972 and 1975; 12 U.S.C. § 1831d[,] the Depository Institutions Deregulation and Monitoring Control Act of 1980 ('DIDA')." (Filing 3 at ¶ 2.) More directly, "[t]his action is brought *specifically* pursuant to 12 U.S.C. §§ 85, 86,

---

[2]Hobson may wish to file a motion for summary judgment pursuant to Fed. R. Civ. P. 56(b), based upon the findings in this order.

[3]In this regard, the parties have jointly stipulated to delay discovery because they recognize the case-ending nature of the pending motions. (*See* filings 33 and 34.)

and 1831 [sic[4]] of the National Bank Act and Section 1831 of DIDA . . . ." (Filing 3 at ¶ 3 (emphasis added).)

In general, the plaintiffs allege that Scott Hobson, formerly the president of the Exchange Bank, "misstated" the value of plaintiffs' collateral, "took" the collateral of plaintiffs or "misappropriated" the funds of the plaintiffs and thereby collected "usurious interest" on behalf of the bank. (Filing 3 at ¶¶ 16-17.) Specifically, the plaintiffs assert the following:

> 16. The cause of action common to all of the Plaintiffs and representatives of the class is that Defendants Scott Hobson, without permission, contrary to the documents, but with the full approval of Defendant Exchange Bank of Gibbon, et. al., deliberately and intentionally misstated or took collateral of Plaintiffs, for his or others benefits, misstated the value of the collateral on the books and records of Defendant Exchange Bank, and that all amounts misappropriated, stolen, misstated, diverted, by Defendant Scott Hobson shall be deemed excessive interest paid by plaintiff/borrower, and each of them. By way of illustration, consider that a plaintiff/borrower between 2001 and 2005, gave one-hundred dollars ($100.00) in cash or its equivalent as collateral for a one-hundred dollar ($100.00) loan from Defendant Exchange Bank of Gibbon bearing interest at the rate of ten percent (10%) per annum, with a due date in one year. At the end of the illustrative year, plaintiff/borrower should be obliged to pay Defendant Exchange Bank one-hundred, ten dollars ($110.00), ten dollars ($10.00) in interest, and one-hundred dollars ($100.00) on principal but received back the one-hundred dollars ($100.00) in collateral. In this case common to all Plaintiffs, Defendant Scott Hobson deliberately misappropriated, diverted, or outright stole collateral of Plaintiffs so that in the foregoing illustration at the end of one year, Plaintiffs would be obliged to pay one-hundred, ten dollars ($110.00), one-hundred dollars ($100.00) principal and ten dollars ($10.00) interest but would only received ninety dollars ($90.00) in collateral back. This amounts to an excessive interest charge of at least twenty percent (20%). Said amount is subject to return by the Defendant Exchange Bank of Gibbon to the Plaintiffs/Borrowers and may not be treated as an offset. Defendant Scott Hobson on behalf of Defendant Exchange Bank routinely,

---

[4]The National Bank Act, originally known as the National Bank Act of 1864, does not appear to contain a section 1831. *See* 12 U.S.C. §§ 21, 38.

systematically and deliberately overstated the statements of financial condition of said borrower so that the loan could be "booked" as a legitimate assets on the books and records of Defendant Exchange Bank; thereafter Defendant Scott Hobson deliberately converted collateral of said Plaintiffs and deliberately diverted payments on loans to his own account thereby again misstating the books and records of the bank, thereby triggering a default and thereby triggering phoney acceleration clauses and attorney's fees clauses, all of which constitute interest which is excessive.

17.  From 2001 to 2005, Defendant Scott Hobson, on behalf and at the direction of Defendant Exchange Bank of Gibbon, et. al., deliberately and intentionally misappropriated, misallocated, converted, diverted, misattributed, misapplied, funds of Plaintiffs, and each of them, in such amounts and to such extent that said funds constitute usury within the meaning of the Nation Bank Act 1984 and DIDA.  Defendants, and each of them, deliberately misstated the assets (that is the loans of Plaintiffs) on the books and records of Defendant Exchange Bank of Gibbon for the period from 2001 through 2005.  Bank records were altered by Defendant Scott Hobson to enhance the attractiveness of certain loans of Plaintiffs so that said loans could be booked on the balance sheet of Defendant Exchange Bank of Gibbon and for the sole purpose of enhancing equity of the Exchange Bank of Gibbon, Defendant Scott Hobson deliberately forged documents behalf of Defendant Exchange Bank of Gibbon including, forged security instruments, forged promissory notes and diverted funds for the benefit of Defendants while acting as a trustee for certain of Plaintiff and in all the while acting as president of the Exchange Bank of Gibbon, and otherwise engaged in deceitful manipulative practices for the sole benefit and at the sole direction of Defendant Exchange Bank of Gibbon the net result of which is that constitute excessive usurious interest.  All misstatements of collateral, misappropriations of collateral, misuse of cash collateral, misstatement of balance sheets of the Defendant Exchange Bank of Gibbon, constitute usurious interest and Plaintiffs, and each of them, are entitled to declare the promissory notes as usurious and to declare a forfeiture of any and all interest to be paid thereunder and to declare that usurious interests paid by Plaintiffs-Borrowers to Defendant and to declare that Plaintiffs-Borrowers receive twice the amount of usurious interests paid to Defendants within the past two year or other discovered thereof in the amount equal to twice interest paid.

(Filing 3 at ¶¶ 16-17 (errors in spelling, grammar, syntax and the like have not been corrected).)

## *II. LEGAL STANDARD*

A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, under Rule 12(b)(6), "[t]he well-pleaded facts alleged in the complaint, not the legal theories of recovery or legal conclusions identified therein, must be viewed to determine whether the pleading party provided the necessary notice and thereby stated a claim in the manner contemplated by the federal rules." *Parkhill v. Minnesota Mut. Life Ins. Co.*, 286 F.3d 1051, 1057-58 (8th Cir. 2002) (insured failed to state a claim based upon manner in which life insurance company advertised or administered particular method of crediting cash values of company's policies). This same "well-pleaded fact" doctrine applies to Rule 12(b)(1) motions. *See*, *e.g.*, *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003) (affirming dismissal of complaint, citing *Parkhill*, emphasizing the importance of "well-pleaded facts" and stating: "A motion to dismiss for lack of jurisdiction under Rule 12(b)(1) which is limited to a facial attack on the pleadings is subject to the same standard as a motion brought under Rule 12(b)(6)" (citations omitted).) In short, artful pleading is not sufficient.

## *III. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE NATIONAL BANK ACT CLAIM*

"If the pleader avers subject matter jurisdiction generally, but allegations in later portions of the complaint negate its existence, the district court should read the complaint as a whole and dismiss the action." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 at 200 (2004). Such is the case here as to the National Bank Act claim.

According to the plaintiffs, the Exchange Bank is a state-chartered bank. (Filing 3 at ¶ 31.) The "interest" provisions of the National Bank Act,[5] upon which the plaintiffs rely, do

---

[5]*See* 12 U.S.C. §§ 85 (regarding rates of interest that national banks may charge) and 86 (prohibiting usurious interest charges and allowing for recovery of "twice the amount of interest thus paid from the *association* taking or receiving the same . . . ." (emphasis added)).

not apply under any circumstance to state banks. *See*, *e.g.*, *Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 687 (E.D. Pa. 1973) (dismissing usury claim against state-chartered banks and stating: "The National Bank Act, 12 U.S.C. § 21 et seq., regulates national banks and only national banks, which can be identified by the word 'national' in their name. 12 U.S.C. § 22.").[6] Therefore, the court does not have subject matter jurisdiction over this case to the extent it is predicated in whole or in part upon the National Bank Act. For that same reason, the amended complaint also fails to state a claim under the National Bank Act.

## IV.  FOR A VARIETY OF REASONS, THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In addition to the foregoing, there are several other reasons why the amended complaint fails to state a claim upon which relief can be granted. I detail those next.

### A.  *No Facts Are Alleged That Trigger Exposure For Illegal Tying*

The plaintiffs have alleged no facts that trigger liability under the federal anti-tying statutes despite plaintiffs' citation to that law. *See* 12 U.S.C. §§ 1972 and 1975. Those statutes prohibit tying one bank product or service to another, and provide a right of action to recover three times the amount of damages sustained, the cost of suit and attorney fees.

To make a sufficient allegation under these sections, the plaintiff "must show that the bank imposed a tie, that the practice was unusual in the banking industry, that it resulted in an anticompetitive arrangement, and that it benefitted the bank." *Doe v. Norwest Bank Minnesota, N.A.*, 107 F.3d 1297, 1304 (8th Cir. 1997) (affirming dismissal for failure to state

---

[6]However, and as I will discuss later in this opinion, the language of 12 U.S.C. §§ 85-86 regarding the meaning of "interest," the cases decided under those statutes regarding "interest" and the Comptroller's regulation about the meaning of "interest" are helpful when construing the similar provisions of 12 U.S.C. § 1831d.

a tying claim). Yet faced with a motion to dismiss, the best the plaintiffs can do is assert that discovery may uncover such illegality in the future.[7] That is not enough.

## *B. The Amended Complaint Fails To State Facts Regarding The Receipt of "Interest," Usurious or Otherwise, Sufficient To Trigger Liability Under 12 U.S.C. § 1831d*

Simplified for the purposes of clarity, 12 U.S.C. § 1831d(a) allows state-charted banks to charge interest equivalent to what national banks may charge. Simplified again, 12 U.S.C. § 1831d(b) provides that if a greater interest rate than allowed under 12 U.S.C. § 1831d(a) is charged by a state-chartered bank, then "the person who paid it may recover in a civil action . . . an amount equal to twice the amount of interest paid from such State bank . . . ."[8]

Whatever else the amended complaint alleges, it states no facts (as opposed to conclusions) that would allow a reasonable finder of fact to conclude that the defendants charged or collected "interest." Instead, the plaintiffs assert in their amended complaint[9] that Hobson, acting for the bank, engaged in intentional wrongdoing, "contrary to the

---

[7]Specifically, in their brief, the plaintiffs "suggest that discovery and depositions will bring to light more specifically, the artifice of these tying arrangements . . . ." (Filing 37 at CM/ECF page 24.) However, neither in the amended complaint nor in the brief are "these" tying arrangements described even in a cursory fashion.

[8]As indicated in the text, I have oversimplified the statute for clarity. The defendants argue that there is no preemption under 12 U.S.C. § 1831d(b) unless the rate specified in 12 U.S.C. § 1831d(a) is higher than the state interest rate ceiling. If there is no state interest rate ceiling, there can be no preemption, so the argument goes. Thus, the defendants assert that there was no preemption here because Nebraska law set no interest rate for any of the loans involved in this case. Defendants state that the loans were for business or agriculture purposes, Nebraska imposes no limitation on interest for such loans and, as a result, section 1831d(b) fails to provide a federal cause of action. (Filing 27 at CM/ECF pages 9-11.) For a variety of reasons, I decline to reach these arguments.

[9]They make similar allegations in their brief. For example, "Mr. Hobson misappropriated, misallocated, took and otherwise can not account for millions of dollars of assets. On December 14, 2006, Mr. Hobson was indicted by the U.S. federal government on 13 counts of violations of federal law, arising out of Mr. Hobson's treatment of the Bank's assets." (Filing 37 at CM/ECF page 6.)

documents[,]" such as by committing theft. (Filing 3 at ¶¶ 16-17.) The plaintiffs *conclude* that any benefit the bank received from Hobson's wrongdoing is properly characterized as "interest." However, and despite this bootstrapping, the facts alleged do not fit with the meaning of the word "interest" as that word is used in section 1831d.

Section 1831d is similar to 12 U.S.C. §§ 85-86. The Office of the Comptroller of the Currency has defined "interest" under 12 U.S.C. § 85. 12 C.F.R. § 7.4001(a) (2007). That regulation defines interest to mean a "payment *compensating* a creditor . . . for an extension of credit, making available a line of credit, or any default or breach by a borrower of a condition upon which credit was extended." *Id.* (emphasis added.)

While broad, the Comptroller's definition of "interest" is not open-ended, and the Courts of Appeal, including the Eighth Circuit, have not been shy about booting plaintiffs at the pleading stage who contend otherwise. *See, e.g., Richardson v. National City Bank of Evansville*, 141 F.3d 1228, 1231 (7th Cir. 1998) (applying the Comptroller's regulation and affirming a dismissal for failure to state a claim regarding a suit brought against a lender asserting that insurance premiums added to the debt constituted "interest"; suggesting that there was an important distinction between fees that "compensate" and fees that "reimburse" the lender)*; Doe v. Norwest Bank Minnesota, N.A.*, 107 F.3d at 1301 (relying upon the Comptroller's definition and holding that "as a matter of federal law" charges to the borrower's account "for collateral protection insurance," imposed after the breach of the borrower's covenant to maintain insurance, were not "interest").

The Comptroller's definition specifically includes things like "numerical periodic rates, late fees, creditor-imposed not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds, overlimit fees, annual fees, cash advance fees, and membership fees." 12 C.F.R. § 7.4001(a).[10] None of the examples included in the Comptroller's definition of "interest" are found in the plaintiffs' amended complaint.

---

[10]In addition, the Comptroller's definition normally *excludes* "appraisal fees, premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit, finders' fees, fees for document preparation or for the services of a notary, or fees incurred to obtain credit reports." *Id.*

On the contrary, the amended complaint speaks to money or value that the bank received because of alleged torts or breaches of contract.

I adopt the Comptroller's definition of "interest" for purposes of construing 12 U.S.C. § 1831d. Despite a 50-page brief,[11] the plaintiffs have failed to cite even one case supporting their position that theft, conversion, forgery, breach of contract and the like when intentionally committed by a bank for monetary gain amounts to the collection of "interest" under the Comptroller's definition or otherwise.[12] There is good reason for this lack of precedent. Words have meaning, and the term "interest" found in 12 U.S.C. § 1831d obviously has no applicability to the plaintiffs' amended complaint. If it were otherwise, any state law tort or breach of contract committed by a state-charted bank in connection with a loan resulting in monetary gain to the bank would become a federal usury case. That cannot be the law.

### C. Even If the Amended Complaint States A Claim Against the Bank Under 12 U.S.C. § 1831d, The Statute Does Not Allow Recovery By Anyone Other Than The Party Who Paid the Interest, And Thus the Complaint Fails to State A Claim Against Non-Borrowers

Following the filing of the motions to dismiss, plaintiffs Mamot Feed Lot and Trucking, Eldon Dubas, Jerry Rowse, and Dale and Delores Brabander have admitted that they do "*not* allege that [they have] ever been a lone [sic] customer at Exchange Bank." (Filing 37 at CM/ECF page 8 ¶ 5 & CM/ECF pages 10-11 ¶¶ 18-20 (emphasis added).) As non-borrowers, they could not have paid any "interest" to the bank no matter how "interest" might be defined. Thus, and even if the amended complaint stated a claim more generally, those plaintiffs have

---

[11] Without intending to be unduly critical of plaintiffs' counsel, placing emphasized words in a brief like "**[NEED CITATION–1800's]**" does not engender confidence in the writer's position. (*See* Filing 37 at CM/ECF page 32 (brackets, capitalization and emphasis in original).) Counsel should be more careful in the future.

[12] The best the plaintiffs can do is to cite cases involving the collection of late payment fees on credit cards. (*See* filing 37 at CM/ECF page 35.) Of course, those fees are *specifically identified and then included* in the Comptroller's definition. As pointed out in the text, the acts complained about here do not fall within that definition either generally or specifically. In short, the late-payment cases involving credit card fees are beside the point.

no right to recover under 18 U.S.C. §1831d(b) because the statute, by its terms, only extends the right of recovery to "the person who paid it . . . ." *Id.*

### *D. Even If The Amended Complaint States A Claim Against The Bank Under 12 U.S.C. § 1831d, The Statute Does Not Extend Liability To Any Other Party or Person And Thus The Complaint Fails To State A Claim Against The Holding Company and the Individual Defendants*

Section 1831d(b) allows for recovery of "twice the amount of the interest paid *from such State bank* . . . ." 18 U.S.C. § 1831d(b) (emphasis added). The plaintiffs have cited no cases, and I have found none, that allow them to sue the bank's holding company or the individual defendants under this section. Since the bank's holding company and the individual defendants are plainly not a "State bank" as described in the statute and since the statute expressly limits liability to a "State bank," the amended complaint fails to state a claim against any of the other defendants.

### *V. CONCLUSION*

To sum up, (1) the court lacks subject matter jurisdiction under the National Bank Act because the bank at issue is not, according to the amended complaint, a national bank and the amended complaint fails to state a claim upon which relief can be granted for the same reason; (2) the amended complaint fails to state a claim for relief under the federal anti-tying statutes because no facts are alleged that suggest tying; (3) the amended complaint fails to state a claim for relief under 18 U.S.C. § 1831d because there are no facts alleged that suggest the receipt of "interest," usurious or otherwise; (4) the amended complaint fails to state a claim for relief under 18 U.S.C. § 1831d because the statute does not allow recovery by any person other than the person who paid the interest, and thus Mamot Feed Lot and Trucking, Eldon Dubas, Jerry Rowse, and Dale and Delores Brabander, who were admittedly not bank customers, have no right of recovery under the statute since they paid no "interest"; and (5) the amended complaint fails to state a claim against the bank holding company or any of the individual defendants since 18 U.S.C. § 1831d by its terms only allows recovery against the bank. Accordingly, and for the reasons expressed earlier, I will grant the motions to dismiss and enter a Rule 54(b) judgment.

Finally, the plaintiffs make a half-hearted suggestion that I should use my discretion to retain supplemental jurisdiction over any state law claims even if I dismiss the federal claim. (*See* filing 37 at CM/ECF page 18.) Setting aside the fact that the plaintiffs spent most of their time arguing that they have but one federal claim, I reject that suggestion. First, supplemental jurisdiction does not apply under 28 U.S.C. § 1367(c)(3) because no original jurisdiction was ever acquired by this court inasmuch as no actionable federal claim was presented in any version of the complaints. *See*, *e.g.*, *Ashby v. Dyer*, 427 F. Supp. 2d 929, 935 (D. Neb. 2006) (holding that the supplementary jurisdiction statute did not apply to allow court discretion to retain jurisdiction over state law claims where no original jurisdiction was ever acquired because no actionable federal claim was pleaded in any version of the complaint) (citing *Avitts v. Amoco Prod. Co.*, 53 F.3d 690, 693 (5th Cir. 1995)). Second, even if I had the power to take supplemental jurisdiction, in the exercise of my discretion I would decline to do so. *Id.* at n. 13.

Accordingly,

IT IS ORDERED that:

1. The motions to dismiss (filings 26 & 30) are granted. The alternative motions for summary judgment are denied as moot.

2. Judgment will be entered by separate document.

August 28, 2007.    BY THE COURT:

    *s/Richard G. Kopf*
    United States District Judge